FILED

2007 Nov-19  AM 10:05
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **TERRIA M. WRIGHT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **CASE NO.: 2:05-CV-2238-VEH** |
| | ) | |
| **BIRMINGHAM BOARD OF** | ) | |
| **EDUCATION,** | ) | |
| | ) | |
| **Defendant.** | ) | |

---

## MEMORANDUM OPINION

Before the court is the motion of the defendant, the Birmingham Board of Education (hereinafter "Defendant"), for summary judgment (doc. 25) as to the claims of Terria Wright (hereinafter "Plaintiff"), filed on June 8, 2007.  For the reasons set forth herein, the motion is due to be **GRANTED**.

## I.    FACTUAL HISTORY[1]

At the time this action was filed, Plaintiff was a thirty-four year old African-

---

[1]  These are the facts for summary judgment purposes only.  They may not be the actual facts.  See *Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1400 (11th Cir. 1994) ("'[W]hat we state as 'facts' in this opinion for purposes of reviewing the rulings on the summary judgment motion [ ] may not be the actual facts'")(citation omitted).  Facts are undisputed unless otherwise noted.  Where the facts are in dispute, they are stated in the manner most favorable to the plaintiff.  See *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112 at 1115 (11th Cir. 1993).

American female engaged in the occupation of teaching English in the Jefferson County, Alabama, area. (doc. 10, exh. 1). She began working for Defendant as an English teacher at Parker High School in 1997. (AAF # 8; Pl. Dep. at 21).[2] In 2002, she voluntarily transferred to Huffman High School, where she taught English until 2004. (AF ## 1, 37).

On June 24, 2004, Defendant posted a notice of vacancy for an assistant principal position at Huffman High School. (AF # 10). Approximately 55 individuals applied for the position, including Plaintiff and Mr. Willie Simmons (hereinafter "Mr. Simmons"), a male physical education teacher at Huffman High School. (AF ## 11, 12; Drew Aff. ¶ 3). Sixteen applicants were selected to interview for the position, including Plaintiff and Mr. Simmons. (AF # 12). Plaintiff was interviewed on July 22, 2004. (doc. 10, exh. 1).

The interviews were conducted by a committee of five individuals, including Willie Goldsmith, principal of Huffman High School, Jesse Daniels, principal of

---

[2] The designation "AF" stands for "admitted fact" and indicates a fact offered by Defendant that Plaintiff has admitted in her written submissions on summary judgment or in her evidentiary submissions in response to Defendant's Motion for Summary Judgment. Whenever Plaintiff has adequately disputed a fact offered by Defendant, the court has accepted Plaintiff's version. The court's numbering of admitted facts (e.g., AF No. 1) corresponds to the numbering of Defendant's Statement of Facts as set forth in doc. 26 and responded to by Plaintiff in doc. 28. Similarly, the designation "AAF" refers to "additional admitted fact" and corresponds to Plaintiff's Statement of Facts contained in doc. 28 and responded to by Defendant in doc. 29. Any other facts referenced by the parties that require further clarification are dealt with later in the court's opinion.

Banks Middle School, Anthony Gardner, principal of Jones Valley School, Joseph Martin, principal of Parker High School, and Ethelda Reynolds, Lead English Teacher at Huffman High School.[3]  (AF ## 14, 15).  Of these five individuals, four were male.  (AAF # 14).  A sixth individual, Ms. Samuetta Drew[4] (hereinafter "Ms. Drew"), supervised the interviews.

The interviews were conducted based on an inquiry into each applicant's general educational background and experience, appropriate education training and certification, familiarity with the school environment and the needs of the community as served by the school, and any special strengths or aptitudes presented by the applicant.  (AF # 18).  Plaintiff's qualifications included two bachelor's degrees, one in English from Berea College in 1995 and another in Language Arts Education from Miles College in 1997.  (AAF ## 1, 2).  Plaintiff also obtained a Master's Degree from the University of Alabama at Birmingham's Collaborative Teacher Program in Special Education in 2001.  (AAF # 3).  In 2002, Plaintiff received a Class "A" Principal's Certificate.  (AAF # 5).  She was also a member of the Association for Supervision and Curriculum Development, the Council for Exceptional Children, the

---

[3]  While it is not clear from the record, it appears that each of the schools represented *supra* belongs to the Birmingham Board of Education.

[4]  Ms. Drew was, at the time Plaintiff was interviewed for the assistant principalship at Huffman High School, Defendant's Human Resources Officer.  (AF # 13).

Alabama Education Association, and the National Council of Teachers of English. (AAF # 6).

Mr. Simmons had obtained a Master's Degree in education from Alabama State University in 2001, and was certified by the State of Alabama Department of Education as a Class A, Educational Administrator. (AF ## 7, 8). He taught physical education for two years with the Dallas County Board of Education.[5] (AF # 6). He then taught physical education at Green Acres Middle School in 2001-2002 and at Woodlawn High School in 2002-2003.[6] (AF # 5). He took a position at Huffman High School as a physical education teacher in 2003. (AF # 4).

Based on the undisputed facts, it appears that Mr. Simmons satisfied every qualification required for the assistant principal position at Huffman High School. (AF # 20). He also demonstrated knowledge of the school's operation, whereas Plaintiff apparently exhibited no administrative knowledge thereof. (AF ## 21, 25). Plaintiff does not dispute that she was not considered the best candidate for the position. (AF # 23).

On July 24, 2004, the position was offered to and accepted by Mr. Simmons.

---

[5] It is not clear from the record which years Mr. Simmons worked for the Dallas County Board of Education, or the precise location(s) of his employment there.

[6] It is also not clear whether Green Acres Middle School or Woodlawn High School are governed by the Birmingham Board of Education.

(AF # 30).  Plaintiff inquired with Willie Goldsmith (as stated *supra*, principal of Huffman High School), as to why she had not been offered the position.  (doc. 10, exh. 1).  The "only feedback" she received from Mr. Goldsmith was that Plaintiff had failed to provide an adequate answer to an interview question.  (Id.).

Later in 2004, Plaintiff requested and received a transfer to Huffman Middle School "to work on her leadership skills." (AF # 38).  However, due to her frustration at not receiving the assistant principalship at Huffman High School, Plaintiff voluntarily resigned her employment with Defendant effective December 17, 2004. (AF # 39; doc. 10, exh. 1).

It is undisputed that, since Plaintiff's resignation, she has applied for four assistant principal positions with the Jefferson County Board of Education, but did not receive an interview for any of them.  (AF # 41; Pl. Dep. at 74).  Meanwhile, as principal of Huffman High School, Willie Goldsmith has recommended the appointment of three female assistant principal applicants.  (AF # 42).  Plaintiff does not dispute Defendant's assertion that none of Mr. Goldsmith's recommendations for assistant principalships have been based, either in whole or in part, on gender or any other impermissible factor.  (AF # 43).

## II.   PROCEDURAL HISTORY

It was not until February 2005 that Plaintiff began to believe gender

discrimination was the reason she did not receive the assistant principalship at Huffman High School. (doc. 10, exh. 1). At that time, Plaintiff allegedly informed her family that she had resigned her employment with Defendant. (Id.). Her aunt then told her that Plaintiff's stepfather, Jimmy Stone, had spoken with Mr. Simmons at a dog track sometime after Mr. Simmons was offered the assistant principalship. (Id.). According to Plaintiff's aunt, Mr. Simmons had bragged to her stepfather that Plaintiff was more qualified for the assistant principalship than he, but that he had received the position anyway. (Id.).

On July 29, 2005, five months after the conversation with her aunt, Plaintiff filed a charge of gender discrimination against Defendant with the Equal Employment Opportunity Commission (hereinafter "EEOC"). (doc. 10, exh. 1). On August 2, 2005, the EEOC closed its file on Plaintiff's charge based on her failure to file the charge within the requisite 180-day filing period. (Id.). *See* 42 U.S.C. § 2000e-5(e)(1); *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1317 (11 Cir. 2001).

On October 31, 2005, Plaintiff filed her Complaint against Defendant in this court, alleging that she had been discriminated against based on her gender in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*., and 42 U.S.C. § 1983. (doc. 1). Plaintiff filed an Amended Complaint, adding that her § 1983 claim arose under Defendant's alleged violation of her right

to equal protection, on January 20, 2006.  (doc. 10).

On February 9, 2006, Defendant filed a Motion to Dismiss, with prejudice, Plaintiff's Amended Complaint, which the court granted as to Plaintiff's Title VII claim on May 9, 2006.[7]  (docs. 11, 12).  On May 17, 2006, Defendant filed an Answer to Plaintiff's Amended Complaint.  (doc. 13).

On June 8, 2007, Defendant filed the pending Motion for Summary Judgment as to Plaintiff's § 1983 claim.  (doc. 25).  Plaintiff filed her response in opposition to the motion on June 29, 2007.  (doc. 28).  Defendant filed its reply on July 10, 2007. (doc. 29).

## III.   STANDARD OF REVIEW

Summary judgment is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  FED. R .CIV. P. 56(c).  All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the nonmovant.  *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

---

[7] The basis of the court's dismissal of Plaintiff's Title VII claim was, similar to that of the EEOC, due to Plaintiff's failure to timely file her EEOC charge of discrimination.  (See Order, doc. 12).

A plaintiff in an employment discrimination case maintains the ultimate burden of proving that the adverse employment decision was based on intentional discrimination. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509-12, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1184 (11th Cir. 1984). Although the Supreme Court previously established the basic allocation of burdens and order of proof in a disparate treatment case, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), as modified by *Desert Palace v. Costa*, 539 U.S. 90, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003), that allocation scheme applies only in cases where there is no direct evidence of discrimination. *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 595 (11th Cir. 1987).

Under the *McDonnell Douglas/Burdine* scheme, a plaintiff first has the burden of proving by a preponderance of evidence a *prima facie* case of discrimination. Once the plaintiff proves a *prima facie* case, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its employment decision. Finally, if the defendant carries its burden, the plaintiff must *either* prove by a preponderance of the evidence that the legitimate reasons offered by the

defendant are merely a pretext for discrimination *or* present sufficient evidence, of any type, for a reasonable jury to conclude that discrimination was a "motivating factor" for the employment action, even though defendant's legitimate reason may also be true or have played some role in the decision.  *McDonnell Douglas Corp.*, 411 U.S. at 802-05, 93 S.Ct. at 1824-27; *Burdine*, 450 U.S. at 252-54, 101 S.Ct. at 1093-95; *Desert Palace*, 539 U.S. at 101-02, 123 S.Ct. at 2155-56.

## IV.   ANALYSIS[8]

---

[8]  As a preliminary matter, the court notes that the parties appear to disagree as to the appropriate analysis to be applied to Plaintiff's § 1983 discrimination claim.  In her brief in opposition to summary judgment, Plaintiff argues that Defendant should be liable for her claim based on the actions of Defendant's superintendent, Dr. Wayman Shiver, who approved the interview committee's selection of Mr. Simmons for the assistant principalship and recommended Mr. Simmons to Defendant to make the final hiring decision.  (AF ## 27, 29-30).  Plaintiff then avers that the *McDonnell-Douglas* framework applicable to Title VII employment discrimination claims applies to her § 1983 claim, and argues that, under this framework, summary judgment is due to be denied.

Defendant, however, focuses its argument on the analysis applicable to § 1983 claims in general, asserting that Defendant, not Dr. Shiver, had final policymaking authority with regard to hiring teachers and other administrators within its employ.  *See Monell v. Dept. of Social Services*, 436 U.S. 658, 690, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978) (to prevail on a § 1983 claim in general, Plaintiff must demonstrate that Defendant caused a constitutional tort through a "policy, statement, ordinance, regulation, or decision officially adopted and promulgated by [Defendant's] officers").  While Defendant made the final decision to hire Mr. Simmons and not Plaintiff, Defendant avers it should not be liable under § 1983 because Plaintiff has failed to offer evidence that the hiring decision was made pursuant to a policy or custom of Defendant that resulted in a constitutional tort consistent with *Monell* and its progeny.

None of the cases cited by Defendant in which this framework is applied to a § 1983 claim involves allegations of employment discrimination.  However, in the Eleventh Circuit, discrimination claims asserted under § 1983 are subject to the same analysis applicable to Title VII discrimination claims.  *See Lee v. Russell County Bd. of Educ.*, 684 F.2d 769, 773 (11th Cir. 1982) ("[f]ocusing first on the [§ 1983] race discrimination charge, it is well established that such a claim may be analyzed under the *McDonnell-Douglas* structure developed in Title VII

To establish a prima facie case of disparate treatment based on her gender, Plaintiff must demonstrate that (1) she is a member of a protected class; (2) she was qualified for the assistant principalship and applied for it; (3) she was not offered the position despite her qualifications for it; and (4) equally or less qualified individuals outside of her protected class were hired for the position. *Underwood*, 431 F.3d at 794. "The prima facie case creates a rebuttable presumption that the employer acted illegally." *Id.*, citing *Combs v. Plantation Patterns*, 106 F.3d 1519, 1527-28 (11th Cir.1997). "'At that point, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for [not hiring] the plaintiff. . . .  If the employer does so, the burden shifts back to the plaintiff to introduce significantly probative evidence

---

suits"); *Mason v. Village of El Portal*, 240 F.3d 1337 (11th Cir. 2001) (applying *McDonnell-Douglas* framework to § 1983 race discrimination claim). *See also Arrington v. Cobb County*, 139 F.3d 865, 873 (11th Cir. 1998) ("[f]or Title VII and § 1983 gender discrimination claims, the order and allocation of proof are well established [and are the same]"); *Tavcar v. City of Riviera Beach*, 2004 WL 2418311, * 3 n. 2 (S.D.Fla. 2004) ("[t]he elements of a prima facie case are the same for employment claims brought under Title VII [and] § 1983").  For decisions outside the Eleventh Circuit consistent with this view, see *Sullivan v. Village of McFarland*, 457 F.Supp.2d 909, 915 (W.D.Wis. 2006) ("[t]he standard for imposing liability on a defendant is essentially the same with respect to § 1983 and Title VII"), citing *Williams v. Seniff*, 342 F.3d 774, 788 n. 13 (7th Cir.2003) ("[o]ur cases make clear that the same standards for proving intentional discrimination apply to Title VII and § 1983 equal protection") and *Malacara v. City of Madison*, 224 F.3d 727, 729 (7th Cir.2000) (using same framework to analyze claims under § 1983 and Title VII).

Therefore, as the record is void of direct evidence that Defendant unlawfully discriminated against Plaintiff, the court will apply the *McDonnell-Douglas* analytical framework to Plaintiff's § 1983 claim.  *See E.E.O.C. v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1286 (11th Cir. 2000) ("[a]bsent direct evidence, a plaintiff may prove intentional discrimination through the familiar *McDonnell-Douglas* paradigm for circumstantial evidence claims").

showing that the asserted reason is merely a pretext for discrimination.'" *Id.*, quoting

*Zaben v. Air Prods. & Chems., Inc.*, 129 F.3d 1453, 1457 (11th Cir.1997).

Defendant does not directly dispute that Plaintiff has presented a prima facie case of discrimination.  However, while the first three elements of her claim may be satisfied, the court is not convinced that Plaintiff has met the fourth element of a prima facie case.  Plaintiff's only argument in support of this element is that Mr. Simmons bragged to her stepfather at a dog track that he was less qualified for the assistant principalship than she.  There is absolutely no basis in the record to substantiate this claim, however, particularly in light of the fact that Mr. Simmons holds a Master's Degree from an accredited public institution and is certified by the State Department of Education as a Class A, Educational Administrator.  (AF ## 7, 8).  Plaintiff argues that there is no further evidence regarding Mr. Simmons' education, "raising questions about his undergraduate education." (Pl's Opp. Br., pg. 12).  The court finds no basis to agree that evidence regarding Mr. Simmons' Master's Degree raises any question about his undergraduate credentials.

However, assuming, without deciding, that Plaintiff has presented a prima facie case of discrimination, the court finds that her § 1983 claim still fails because she has offered no evidence that Defendant's proferred non-discriminatory reason was a pretext for discrimination.  Defendant argues that Plaintiff was not "deemed the best

candidate for an administrative position," a proposition which Plaintiff failed to dispute in her response to Defendant's statement of facts.   (See AF # 23). Furthermore, Plaintiff has not disputed Defendant's contention that she exhibited no administrative knowledge as to the daily operations of Huffman High School, whereas Mr. Simmons had exhibited such knowledge and otherwise "met all the requisite qualifications" for the assistant principalship.  (See AF ## 20, 21, 25). Nevertheless, Plaintiff argues that Defendant's explanation for failing to hire her is a pretext for discrimination.

In *Reeves v. Sanderson Plumbing Products, Inc.*, the United States Supreme Court explained that "[p]roof that the defendant's explanation is unworthy of credence is [ ] one form of circumstantial evidence that is probative of intentional discrimination. . . ."  530 U.S. 133, 147, 120 S.Ct. 2097, 2108, 147 L.Ed.2d 105 (2000).  Plaintiff, however, appears to dispute the Eleventh Circuit's standard governing pretext claims based on superior qualifications, which has been articulated as follows: "[p]retext can be established through comparing qualifications only when 'the disparity in qualifications is so apparent as virtually to jump off the page and slap you in the face.'" *Ash v. Tyson Foods, Inc.*, 129 Fed.Appx. 529, 533, quoting *Cooper v. Southern Co.*, 390 F.3d 695, 732 (11th Cir.2004).  Plaintiff misstates the Supreme Court's recent conclusion in *Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 458-59, 126

12

S.Ct. 1195, 1197-98, 163 L.Ed.2d 1053 (2006) as "impress[ing] upon the Eleventh Circuit the use of other standards," including those articulated by the Ninth Circuit in *Raad v. Fairbanks North Star Borough School Dist.*, 323 F.3d 1185, 1194 (9th Cir. 2003) (holding that qualifications evidence standing alone may establish pretext where the plaintiff's qualifications are "clearly superior" to those of the selected job applicant), or the District of Columbia Circuit in *Aka v. Washington Hospital Center*, 156 F.3d 1284, 1294 (D.C.Cir. 1998) (*en banc*) (concluding the factfinder may infer pretext if "a reasonable employer would have found the plaintiff to be significantly better qualified for the job").  While the Supreme Court did take issue with the Eleventh Circuit's semantics in *Ash*, it did not "impress" upon the law of this circuit any other standard, expressly stating that "[t]his is not the occasion to define more precisely what standard should govern pretext claims based on superior qualifications."  *Ash*, 546 U.S. at 458, 126 S.Ct. at 1198.

Furthermore, the Court appeared to cite with approval the Eleventh Circuit's standard as otherwise articulated in *Cooper*, wherein the Circuit Court instructed that "'disparities in qualifications must be of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question.'"  *Ash*, 546 U.S. at 457, 126 S.Ct. at 1197, quoting *Cooper*, 390 F.3d at 732.  Therefore, this court will apply

13

the standard of <u>this</u> circuit, as instructed by the court in *Cooper*, in determining whether Plaintiff is correct in arguing that she was better qualified for the assistant principalship than Mr. Simmons, and hence, Defendant's articulated, non-discriminatory reason for failing to hire her is a pretext for gender discrimination.

While Plaintiff argues that she was more qualified than Mr. Simmons, she offers no evidence that the disparities between her qualifications and those of Mr. Simmons are "of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen" Mr. Simmons in favor of Plaintiff for the assistant principalship.  Plaintiff's only evidence of her superior qualifications is (1) Mr. Simmons's alleged belief that Plaintiff was more qualified than he, (2) Plaintiff's mistaken belief that Mr. Simmons does not hold a Master's Degree, and (3) the fact that Plaintiff has four years more teaching experience than Mr. Simmons. As to the first two points, the court finds them either unsubstantiated or directly contradicted by other evidence of record, which Plaintiff failed to dispute in her response to Defendant's statement of facts.  As to the third, a lengthier history of <u>teaching</u> experience in no way demonstrates to the court that Plaintiff was more qualified as an <u>administrator</u> than Mr. Simmons.  While such evidence is probative of Plaintiff's superior qualifications, it does not, standing alone, suffice to rebut Defendant's argument that Plaintiff was not the best candidate for an assistant

14

principalship.  Furthermore, Plaintiff avers that, according to Willie Goldsmith, she was not offered the position because she failed to adequately answer <u>one</u> interview question.  However, she offers neither argument nor evidence that Mr. Simmons failed to answer <u>any</u> question improperly during his interview.

Finally, while Defendant argues that Plaintiff exhibited no knowledge of the daily administrative affairs of Huffman High School, Plaintiff disputes this argument only by asserting that she once served as acting assistant principal at that school, and she therefore "had experience" in that position.  That Plaintiff "had experience" in the position at some point prior to her interview in no way demonstrates that she understood the daily affairs of the school when she applied for the position.[9]  Plaintiff avers that she "could have easily learned whatever day-to-day operations had changed" since she served as acting assistant principal.  While this may be true, such argument offers little, if any, support for Plaintiff's argument that Defendant's decision not to hire her was based on a discriminatory motive.

## V.    CONCLUSION

Plaintiff has failed to offer evidence that Defendant discriminated against her such that she was carried her burden under the *McDonnell-Douglas* framework.

---

[9]  Plaintiff does not argue that she was <u>successful</u> in that position, and the court finds no basis to conclude that, simply because she had acted in the position in the past, Plaintiff was <u>necessarily</u> more qualified for the position than Mr. Simmons.

Therefore, Plaintiff's gender discrimination claim under 42 U.S.C. § 1983 must fail.

Accordingly, Defendant's Motion for Summary Judgment is due to be **GRANTED**.

A separate Order will be entered.

      **DONE** and **ORDERED** this the 19th day of November, 2007.

**VIRGINIA EMERSON HOPKINS**
United States District Judge

16